FILED
2014 Oct-16  PM 02:04
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| JANET COOPER, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) Case No.  6:13-cv-00998-HGD |
| | ) |
| CAROLYN COLVIN, | ) |
| COMMISSIONER, SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant | ) |

## <u>MEMORANDUM OPINION</u>

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits (hereinafter DIB).  (Doc.1).  The parties filed written consent and this action has been assigned to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.  (*See* Doc. 13).  Upon consideration of the administrative record and the memoranda of the parties, the court finds that the decision of the Commissioner is due to be affirmed and this action dismissed.

## I.      Proceedings Below

Plaintiff in this action, Janet Stickels Cooper, protectively filed for a period of disability and DIB on February 16, 2010, alleging that she became disabled on June 18, 2009.  (Tr. 9, 119-25).  Her application was denied administratively and plaintiff requested a hearing before an Administrative Law Judge (ALJ).  The hearing was held before the ALJ on January 4, 2012, who denied plaintiff's claim.  In a decision dated April 6, 2012, the ALJ found that plaintiff was not disabled.  (Tr. 9-18).  Plaintiff requested review by the Appeals Council, which was denied on April 8, 2013.  (Tr.1-3).  The Commissioner's decision is ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.

*Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work, 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

The ALJ followed this protocol, finding, at the second step, that plaintiff has the following severe impairments: uncontrolled diabetes mellitus, type II; obesity; right shoulder degenerative joint disease; and major depressive disorder. (Tr. 12). The ALJ then found that plaintiff's impairment or combination of impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subp. P, Appx. 1. (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). This was not contested by plaintiff. (Tr. 13).

At step four, the ALJ found that plaintiff could not perform her past relevant work. (Tr. 16). However, the ALJ concluded that plaintiff had a RFC limited to a light range of work; that is, she is limited to (1) lifting/carrying less than ten pounds occasionally and frequently; (2) infrequent postural maneuvers such as balancing, stooping, kneeling, and climbing ramps and stairs; (3) occupations that do not require climbing ropes, ladders, or scaffolds; (4) occasionally crouching and crawling; (5) avoid overhead reaching with the right upper extremity; (6) avoid concentrated heat or cold temperature extremes; (7) avoid unprotected heights; (8) simple instructions with no detailed instructions; and (9) concentrating and remaining on task for two hours at a time, sufficient to complete an eight-hour day. (Tr. 13).

Based on the RFC and vocational profile of plaintiff, the ALJ elicited testimony from a vocational expert (VE) who testified that, given these restrictions, plaintiff can perform light jobs, such as electrical assembler, poultry trimmer, and

inspector/hand packager, that exist in significant numbers in the national economy. After considering the VE's testimony, the ALJ found plaintiff was not disabled under the Act during the relevant period from June 18, 2009, to April 6, 2012. (Tr. 18).

## III.   Issues Presented

On appeal, plaintiff alleges that (1) the ALJ failed to properly evaluate the credibility of the plaintiff's complaints of pain consistent with the Eleventh Circuit's Pain Standard, and (2) substantial evidence does not support the ALJ's RFC determination. (*See* Doc. 11, Plaintiff's Brief, at 1-13).

## IV.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.   Discussion

Plaintiff bears the ultimate burden of proving disability. *See* 42 U.S.C. § 423(d)(1)(A), (5); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Plaintiff alleges that the ALJ improperly disregarded medical testimony and plaintiff's own testimony regarding the limiting effects of her symptoms solely because there were occasions where the "claimant has intermittently reported periods of 'feeling better.'" (Tr. 14). According to plaintiff, the ALJ failed to properly assess her longitudinal medical history which documented complaints and treatment for her uncontrolled diabetes.

In particular, plaintiff cites numerous records from the Endocrine and Metabolic Disorders Institute, where she was treated for her diabetes, which reflect many complaints of uncontrolled blood sugar and associated symptoms including

headaches, weakness, fatigue and neuropathy in both of her lower extremities. (Doc. 11, Plaintiff's Brief, at 7-9).

The ALJ did, in fact, state that she found that plaintiff suffered from uncontrolled blood sugar. However, in addition, she noted that plaintiff had not consistently taken her diabetes medication as directed (Tr. 14, 237, 827, 950); failed to comply with her physician's recommendations regarding diet and exercise (Tr. 14, 767, 781, 792, 827, 948, 952); that she had intermittently reported periods of "feeling better" (Tr. 14, 241, 946, 952, 967); and her longtime treating physician, Dr. Romero, often did not find any abnormalities upon physical exam (Tr. 14, 817, 819-20, 824-25, 829-30, 839, 848-49, 853-54, 934, 940). Thus, the ALJ did not fully credit plaintiff's testimony regarding the effects of her diabetes simply because there were occasions when she was feeling better. She did so based on other evidence, as well. The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, she further found that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not fully credible. (Tr. 13-14). Based on plaintiff's history of uncontrolled diabetes, the ALJ included exertional, postural and environmental limitations in the plaintiff's RFC. All of this is supported my medical records and other evidence submitted to the ALJ.

Plaintiff further complains that the ALJ failed to properly credit plaintiff's testimony regarding her debilitating symptoms from her mental impairments, seemingly rejecting it because plaintiff did not seek mental health treatment after her alleged onset date until May 2011. (Doc. 11, Plaintiff's Brief, at 10; Tr. 15). Plaintiff notes that in May 2011 she was diagnosed with Major Depressive Disorder, Severe without psychotic features and her Global Assessment of Functioning (GAF) was placed at 38-40. (Tr. 884, 885). Plaintiff further notes that, on one occasion prior to May 2011, in November 2010, she reported that she had been very depressed and sick for the past month with uncontrolled blood sugar. (Tr. 786).

However, although she complained about this problem, plaintiff did not seek any treatment for her mental health in November 2010. Merely being diagnosed with this condition does not establish that her mental impairments interfered with her ability to perform basic work activities. *See Wind v. Barnhard*, 133 Fed. App'x 684, 690 (11th Cir. 2005) (unpublished) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work.")).

In addition, the ALJ addressed plaintiff's low GAF score and noted that it remained 38 upon discharge from the program in November 2011, despite treatment records documenting plaintiff's steady improvement. (Tr. 15, 891-93, 996-98).

Furthermore, the Commissioner has noted that the GAF scale "does not have a direct correlation to the severity requirements in [SSA's] mental disorder listings." 65 Fed. Reg. 50746 at 50764-65; *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (GAF score may assist ALJ in formulating a claimant's RFC, but is not essential). Similarly, the Ninth Circuit has found that a claimant with a GAF score of 40 was not disabled. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (claimant with a GAF score of 40 was not disabled); *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant with GAF scores ranging from 45 to 61 was not disabled).

The ALJ also noted that plaintiff participated in several group sessions on money management, stress management and social skills. (Tr. 15, Exs. 33F and 44F). She further noted that plaintiff was discharged from this therapy in November 2011, based on a recommendation for treatment in an alternate setting for "minimal acute needs." (Tr. 15, Ex. 44F).

The records presented to the ALJ also reflected that plaintiff sought psychiatric treatment at Winfield Behavioral Health Center where, in October 2010, she was diagnosed by a psychiatrist with recurrent, severe, major depressive disorder with psychotic features, generalized anxiety disorder, rule out bipolar disorder, and a GAF score of 55. (Tr. 15, Ex. 35F). However, her treating psychiatrist also observed that plaintiff's capability for activities of daily living was average and that she had an

apathetic mood with congruent affect, cooperative behavior, and logical thinking. He further found that she had fair judgment, limited insight, and good concentration. Plaintiff was prescribed Celexa and Klonopin. Within a month, she reported improvement with the medication. The treating psychiatrist increased her dosage of these medicines and again noted that her GAF score was 55. (*Id.*).

The ALJ also observed that plaintiff's activities of daily living are inconsistent with her allegations of disability, noting that plaintiff reported caring for most of her personal needs, taking care of a cat, preparing meals, cleaning, including loading the dishwasher daily and occasionally sweeping and vacuuming, doing laundry, watching television, reading books, using the computer to email and pay bills, attending church multiple times a week and visiting with family members. In addition, the ALJ stated that the records shows that plaintiff has been able, at least at times, to mow the lawn with a riding lawn mower. Based on this, the ALJ found these activities to be inconsistent with plaintiff's contentions of severe pain and dysfunction and diminished the credibility of her allegations of disability. (Tr. 16).

Plaintiff also complains that the ALJ failed to give significant weight to the opinion of Ms. Tami Green, CRNP, CDE, who had helped plaintiff regarding her treatment at Winfield Family & Occupational Medicine since March 14, 2011. Ms. Green opined, in a letter dated December 27, 2011, that plaintiff was "unable to work any type of job" due to her diabetes, severe depression and other problems. (Tr. 992).

In assessing the claimant's RFC, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  The ALJ also must consider any findings of a state agency medical or psychological consultant, who is considered an expert, and must assign weight and give explanations for assigning weight the same way as with any other medical source.  *See* 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2); SSR 96-6p, 1996 WL 374180 (July 2, 1996)).  In determining how much weight to give a medical opinion, the ALJ considers factors such as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the doctor's specialization.  *See* 20 C.F.R. §§ 404.1527(c) and 416.927(c).

The ALJ gave "little weight" to the opinion of Ms. Green.  (Tr. 16).  In the decision, the ALJ gave Ms. Green's opinion little weight  because it was conclusory. Ms. Green cited no specific functional limitations which caused her to reach this conclusion.  The ALJ also rejected Ms. Green's conclusion because it was an opinion on an issue reserved to the Commissioner.  (*Id.*).  *See* SSR 06-3p (opinions from "other sources" should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence).  *See also* 20 C.F.R. § 404.1527(d) (some opinions, such as RFC or a claimant's ability to work, are not

medical opinions, but rather "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case").

In addition, Ms. Green is not an acceptable medical source. *See* 20 C.F.R. § 404.1513(a)(1)-(5) (licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists are acceptable medical sources); 20 C.F.R. § 404.1513(d)(1) (non-acceptable or "other" medical sources include chiropractors, therapists, physicians' assistants and nurse practitioners). Ms. Green is a nurse practitioner. Only an acceptable medical source can establish the existence of the medically determinable impairment and give medical opinions. These include opinions regarding the severity of a claimant's impairments and what the claimant can or cannot do despite or because of the impairment. 20 C.F.R. § 404.1527(a)(2). Consequently, the ALJ did not err by giving Ms. Green's opinion little weight.

Plaintiff also objects to the weight given by the ALJ to the opinions of the state agency medical and psychological consultants. The psychological consultant, Steven D. Dobbs, Ph.D., did not find plaintiff's mental functioning to be markedly limited in any category. He only found her to be moderately limited in the sense that she is able to understand and remember simple and detailed instructions, but not complex instructions. He also found that her ability to complete a normal workweek and workday without interruption from psychological symptoms to be moderately limited, but that she was able to sustain attention/concentration for two hour periods,

sufficient to complete a regular workday at an acceptable pace and attendance schedule. (Tr. 479-81).

The physical RFC assessment performed by the state agency medical consultant, Dr. K. M. Cameron, found that plaintiff could frequently lift and/or carry ten pounds and sit or stand for about six hours in an eight-hour day. Dr. Cameron found that plaintiff was limited in her upper extremities and was limited in her ability to reach in all directions. The state agency physician also found that plaintiff should never have to balance and only occasionally crouch or crawl. Likewise, he found she should avoid concentrated exposure to extreme heat or cold and avoid all exposure to hazards, such as hazardous machinery and unprotected heights. (Tr. 502-06). The physician noted that her diabetes, high blood pressure, and lungs seem to be stable and controlled by medications. Her back problems are very mildly limited. He also found that plaintiff's statements regarding her right shoulder to be only partially credible in that this shoulder did have some limitations, but the severity alleged was not consistent with the evidence in the file. (Tr. 507). That evidence includes notes from a medical examination of plaintiff on July 9, 2010, where she complained of pain with the movement of her right shoulder, but the examiner noted that it was non-tender. The examiner also noted that plaintiff could raise her right shoulder in the forward direction to 100 degrees and abduct it to 90 degrees. (Tr. 509).

The report of this state agency physician reflects that he also reviewed other medical records regarding the treatment of plaintiff's various medical problems.  The ALJ gave great weight to both of these medical sources noting that they "adequately considered the claimant's subjective complaints as well as the combined effects of her multiple impairments."  (Tr. 16).  She did not err in doing so.

Finally, plaintiff also claims that the VE testified that plaintiff has not acquired skills which transfer to anything lighter than medium and that, accordingly, the Medical Vocational Guidelines are appropriate.  However, this is not the complete picture.  The VE stated that plaintiff's prior work as a truck driver was a skill that did not transfer to anything lighter than medium.  However, the VE also stated that plaintiff had worked a job as a DOT title checker, which is a light, unskilled job.  Thus, the ALJ did not err when she found that plaintiff could perform light work with certain limitations.  Furthermore, the Grid Rule cited by plaintiff, 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.14, applies to individuals of "advanced age" whose maximum sustained work capacity is limited to sedentary work.  Plaintiff's RFC limits her to light work.  This  RFC is supported by substantial evidence.  Therefore, this Rule is inapplicable.

## VI.   Conclusions

There is substantial evidence that plaintiff could perform light work with the significant limitations as set out in plaintiff's RFC.  Likewise, there is substantial

evidence that there are jobs which plaintiff can perform that exist in significant numbers in the national economy. The ALJ provided detailed and adequate reasons for her findings. Accordingly, upon review of the administrative record, and considering all of the plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. Therefore, that decision is due to be affirmed. A separate order will be entered.

DONE this 16th day of October, 2014.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE